# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

## Docket No. 11-17277

---

## NORMAN GARAND,
Appellant,

vs.

## J.P MORGAN CHASE BANK, N.A and
## CALIFORNIA RECONVEYANCE COMPANY

Appellees,

---

On Appeal from An Order of the
United States District Court
for the District of Nevada

---

## APPELLANT'S OPENING BRIEF

---

Kathryn Reynolds, (California SBN 206554)
The REYNOLDS LAW FIRM, INC.
620 Newport Center Drive, Suite 1100
Newport Beach, California 92660
Mailing:  P.O. Box 3456, Truckee, CA 96160
(949) 718-4423 - phone
(530) 587-2971
(949) 721-6650 – fax

kreynoldsesq@earthlink.net

Attorneys for Appellant

TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | TABLE OF AUTHORITIES | 3-4 |
| II. | STATEMENT OF JURISDICTION | 5 |
| | A. The Basis for the District Court's Jurisdiction | 5 |
| | B. The Basis for the Court of Appeals Jurisdiction | 5 |
| | C. Filing Date of Appeal | 5 |
| | D. Assertion that the Appeal is from a Final Order of Judgment that Disposes of all Parties' Claims or Information Establishing the Court of Appeals Jurisdiction on Some Other Basis | 6 |
| III. | ISSUES PRESENTED | 6 |
| IV. | STATEMENT OF THE CASE | 7-8 |
| V. | STATEMENT OF FACTS | 8-17 |
| VI. | SUMMARY OF ARGUMENT | 17 |
| VII. | STANDARDS OF REVIEW | 18-19 |
| VIII. | ARGUMENT | 19 |
| | 1. INTRODUCTION | 19 |
| | 2. THE WAMU DEED OF TRUST WAS BREACHED | 24 |
| | 3. APPELLEE JPMC IS NOT A REAL PARTY IN INTEREST | 26 |
| | 4. APPELLEES HAVE VIOLATED NRS 107.080 | 28 |
| | 5. THE DISTRICT COURT ERRED IN IGNORING JPMC'S LACK OF STANDING | 31 |
| | 6. THE DISTRICT COURT ERRED IN FIND CRC HAD STANDING UNDER THE BREACHED WAMU DEED OF TRUST | 32 |
| | 7. ABUSE OF POWER | 34 |
| | 8. THERE WERE TRIABLE ISSUES OF FACT | 34 |
| VIII. | CONCLUSION | 35 |
| IX. | CERTIFICATE OF COMPLIANCE | 36 |
| X. | STATEMENT OF RELATED CASES | 36 |
| XI. | CERTIFICATE OF SERVICE | 36 |

# 1  TABLE OF AUTHORITIES

Pages

## NEVADA SUPREME COURT CASES

*Leasepartners Corp., Inc. v. Robert L. Brooks Trust,*
 *942 P.2d 182, 187 (Nev. 1997)* — 15

*Leyva v. National Default Servicing Corp.,*
(July 7, 2011) 127 Nev. Adv. Op. No. 40, Case No. 55216 — 21,22,30

*Pasillas v. HSBC Bank USA*, 255 P.3d 1281 (2011) — 11, 23

## CALIFORNIA SUPREME COURT CASES

*Alliance Mortgage Co. v. Rothwell* (1995) — 33
10 C4th 1226 [S043065 Cal Sup Ct Aug., 28, 1995]

## 9TH CIRCUIT CASES

*Boaz v. Mutual Life Ins. Co. of New York* (1944) — 5
146 F.2d 321

*Cervantes v. Countrywide Home Loans, Inc.* — 20, 23
656 F.3d 1034 (2011)

*Chapman v. Deutsche Bank Nat. Trust Co.* (2011) — 5, 18, 36
651 F. 3d 1039

## DISTRICT COURT CASES

*Herrera v. Deutsche Bank Nat. Trust Co.* — 18, 34, 35
(2011), 196 Cal.App.4[th] 1366

*Lupertino v. Carbahal* 35 Cal. App. 3d 742 — 33

*Mabry v. Superior Court* (2010) — 30
185 Cal.App.4[th] 208, 235

*Stephens, Partain & Cunningham v. Hollis* (1987)                    33
196 Cal. App. 3d 948, 955

BANKRUPCTY COURT - CALIFORNIA

*Veal v. American Home Mortgage Servicing Inc.*              21
450 B.R. 897 (2011)


Federal Statutes:

FRCP 6                                                              5
FRCP 59                                                    5, 15, 19

State Statutes:

NRS § 106.260                                    7, 12

NRS § 106.270                                    7, 12

NRS § 106.290                                    7, 12

NRS § 107.073                                    7, 12

NRS § 107.077                                    7, 12

NRS § 107.080              2, 6, 11, 12, 13, 16, 17, 28, 29, 30, 31

NRS § 163.4145                                      24

## II.   STATEMENT OF JURISDICTION

A.   The Basis for the District Court's Jurisdiction.  On March 8, 2010, Appellant filed his in-pro-per verified complaint in Washoe County District Court, State of Nevada, Case No. CV10-00670 to quiet title to his Property,  [EOR DOC. 84-3].  On April 13, 2010, Appellee J.P. Morgan Chase (hereinafter "JPMC") and Appellee California Reconveyance Company (hereinafter "CRC") caused the case to be removed to federal court based upon diversity, 28 U.S.C. § 1441(b), [DOC. 1]. Diversity was the sole basis for the District Court taking jurisdiction.  Perhaps the federal court never had jurisdiction due to the state court having already taking original jurisdiction over in rem property. *Chapman v. Deutsche Bank Nat. Trust Co.* (2011) 651 F. 3d 1039.

B.   The Basis for the Court of Appeals Jurisdiction.  This Court has jurisdiction of this appeal based upon the final order of the United States District Court denying Appellant's FRCP 59(e) Motion to Alter or Amend the Order [EOR Vol. 2 Doc. 99] denying Appellant's Motion for Summary Judgment [EOR Vol. 2 Doc. 83-2] and granting Appellees' Motion for Summary Judgment [EOR Vol. 2 Doc.  81].

The Motion to Alter was filed on July 8, 2011, 9 days after the June 29, 2011, Order granting Summary Judgment to Appellees, JPMC and CRC.  This was filed within the 28 days required by FRCP 6.

On August 26, 2011, the District Court denied the July 8, 2011 Motion to Alter or Amend the Order [EOR Vol. 1 Doc. 106] it made on June 29, 2011, even though it found that Appellant JPMC was not the Lender and that the trustee "CRC .... didn't have that right under the loan agreement."  [EOR Doc. 106, p.2]

Jurisdiction is proper because the District Court could have taken power back over the case therefore the time period to file the Notice of Appeal is extended.  FRCP 59(e) *Boaz v. Mutual Life Ins. Co. of New York* (C.C.A.8th, 1944) 146 F.(2d) 321.

C.   Filing Date of Appeal.  Notice of Appeal was filed on September 23, 2011. [Doc. 107].  The filing of Appeal was filed 28 days after the final August 26, 2011 final Order denying amending or altering the Order.

D.   <u>Assertion that the Appeal is from a Final Order of Judgment that</u>
<u>Disposes of all Parties' Claims or Information Establishing the Court of</u>
<u>Appeals Jurisdiction on Some Other Basis</u>.  This appeal is from an order
denying Appellant's FRCP 59(e) Motion to Alter or Amend the Order
denying Appellant's Motion for Summary Judgment and granting
Defendant JPMC'S Motion for Summary Judgment. *Boaz v. Mutual Life*
*Ins. Co. of New York* (C.C.A.8th, 1944) 146 F.(2d) 321.  The District Court
had the power to amend.  FRCP 59(e).

There are no issues, causes of action, or parties that remain for the
court below.


## III. ISSUES PRESENTED

1.  Did the District Court err in granting **summary judgment**
    to Appellees JPMC and CRC, allowing them to proceed to use
    the WAMU Deed of Trust to foreclosure on behalf of JPMC
    as a Servicer?

2.  Was the Deed of Trust **breached** when WASHINGTON
    MUTUAL sold the Appellant's Note?

3.  Did Appellee JPMC violate **NRS 107.080** by acting as
    Lender on a Notice of Default?

4.  Did Appellee CRC violate **NRS 107.080** by acting as a
    Trustee, under the terms of a Washington Mutual Deed of
    Trust, to cause to be recorded and published a Notice of
    Default on behalf of Appellee JPMC?

5.  Did the District Court err in denying the Motion to Alter?

6.  Did the District Court err in granting Summary Judgment to
    JPMC and CRC?

## IV. STATEMENT OF THE CASE.

In this case a top bank, JPMC, is attempting to foreclose on Appellant's Property located at 350 Broadway Blvd., Reno, NV (the "Property") using a WAMU Deed of Trust. [Grant Deed, EOR Doc. 84-2]

The only contracts Appellant is liable under regarding his Property were between Appellant and WAMU. The contract was composed of a Promissory Note [EOR Vol. 2, Doc. 84-6] and a Deed of Trust [EOR Vol. 2, Doc. 84-7]. WAMU has since been seized by the FDIC and is no longer in existence. WAMU never recorded an Assignment of the Deed of Trust. JPMC makes no claims to have an Assignment, recorded or otherwise.

The WAMU Deed of Trust is inoperable. WAMU and CRC breached the WAMU Deed of Trust as discussed herein. Their failure to discharge or release the secured interest left in favor of WAMU violated NRS 106.260, 106.270 and 106.290, NRS 107.073 and 107.077 for failure to discharge and reconvey and 107.080 for the invalid Notice of Default, as complained of in the original verified complaint. [EOR Vol. 2, Doc. 84-3]

Appellant is not in default of any obligation to Appellee JPMC.

The JPMC Notice of Default is void because the District Court found that Appellee JPMC was not the Lender, among other reasons.

The District Court found that Appellate JPMC had purchased servicing contracts through a Purchase and Assumption Agreement with the FDIC.

The District Court ignored the Further Evidence Supplemental Information [EOR Doc. 104, pg. 2] that the Deed of Trust contract does not provide that the servicing contract is assumed by the new Note purchaser, it is not.

The District Court ignored arguments that Appellee JPMC had no

standing, did not own the Note, had no assigned interest in the deed of trust, the trustee "didn't have the right under the loan agreement", in the court's own words. [EOR Doc. 106, page 3, lines 6-7].

The District Court granted summary judgment in favor of Appellee JPMC as a Non-Note Holder. "Defendant JP Morgan purchased certain assets and liabilities of WAMU including the right to act as loan servicer over the underlying mortgage notes" [EOR Vol 1. Doc. 97, pg. 2, lines 6-7]

Appellant filed a Motion to Amend or Alter based on the mistake of law and fact, as detailed herein.

The Motion To Amend was denied. This appeal was filed.

## V.    STATEMENT OF FACTS

## A.    THE CONTRACTS

On or about January 23, 2007, Appellant entered into an Adjustable Rate Note with WAMU, as "Lender", in the amount of $208,000 (the "WAMU Note"). (EOR Vol. 2, Doc. 84-6). There were no other parties to this contract.   MERS was not a party to Appellant's contracts.

Appellant is only contractual obligations to pay the Lender.

"Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder". [EOR Doc. 84-6, pg. 1]

On the same date, January 23, 2007, Appellant entered into a Deed of Trust, also naming WAMU, as the Lender, and naming CRC, as Trustee (the "WAMU Deed of Trust") [EOR Doc. No. 84, Ex. #6 & #7]. The Note(s) were initially secured against the Property.[1]

The Appellate and Appellees are in agreement that the WAMU Note,

---

[1] On January 23, 2007 Appellant also entered into a second Note and deed of trust which are not the subject of the foreclosure attempt but are likewise not secured against the Property.

was sold by WAMU in 2007 before the FDIC seized WAMU on September 25, 2008.

The copy of the WAMU Note provided by Appellee JPMC in discovery, as indicated by the "Chase G0380" number in the bottom right corner, has an endorsement "in blank" allegedly from WAMU. [EOR Vol 2, Doc. 84-6, pg.5]

B.    PURCHASE AND ASSUMPTION AGREEMENT

On or about September 25, 2008, WAMU was seized by the FDIC and some of its remaining "assets and liabilities" were sold to JPMC. There is NO evidence that the WAMU Notes was included in the sale as the WAMU Note was sold in 2007.

The contract entered into by these 2 strangers to Appellant or his Property, is entitled "Purchase and Assumption Agreement Whole Bank among Federal Deposit Insurance Corporation, Receiver of Washington Mutual Bank, Henderson, Nevada, Federal Deposit Insurance Corporation and J.P. MORGAN CHASE, National Association, dated as of September 25, 2008" (the "Purchase and Assumption Agreement"). A review of this Agreement shows that it does not involve Appellant and nowhere mentions Appellant or Appellant's real Property. [EOR Doc. 102-6, page 1-24 & 7, pages 1 - 22]

Instead of arguing that Appellee JPMC has been assigned the Deed of Trust or had purchased the WAMU Note, JPMC has claimed it obtained its interest through the sale of the remaining "assets and liabilities" of WAMU as of September 25, 2008.    By mid 2009, Appellant had learned that the top banks do not own the Notes and should not be foreclosing, he stopped making payments to Appellee JPMC and began trying to determine who owns his Note(s).

## C.    THE NOTICES OF DEFAULT

On or about October 12, 2009, Appellees caused to be prepared two different Notices of Default.  One naming WAMU as Lender [EOR Vol. 3, Doc. 102-3, last ¶) was submit to the State of Nevada in order to obtain the Certificate from the required mediation program in Nevada, it was obtained and the State of Nevada authorized "the beneficiary may proceed with the foreclosure process".  [EOR Vol. 3, Doc. 102-4]  The Notice of Default recorded in the Washoe County records on behalf of JPMC is fraudulently obtained.  [EOR Vol. 3, Doc. 102-5, pg 2]

Appellee JPMC admits it caused Appellee CRC to record the Notice of Default.

> "Chase, as servicer for Freddie Mac, directed CRC, as trustee, to cause to be recorded a Notice of Default and Election to Sell Under Deed of Trust under Chapter 107 of the Nevada Revised Statutes, which was recorded on October 12, 2009 in the Official Records of the Washoe County, Nevada Recorder."  [EOR Doc. 93, pg. 13, lines 20-24]

> Appellee JPMC was not the authority to call the Default.  The language of the Deed of Trust is clear, the Lender calls the Default:

> "**Lender shall give notice** to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument.  The notice shall specify:  (a) **the default**; (b) the action required to cure the default; (c) a date, not less that 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The **notice shall further inform Borrower of the right to reinstate after acceleration** and the right to bring a court action to assert the non-existence of a default or any other defense of

Borrower to acceleration and sale. **If the default is not cured** on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorney's fees and costs of title evidence.

The District Court completely ignored the alleged fraudulent Notice of Default. In contrast to the court in *Pasillas v. HSBC Bank USA,* when the court noticed the district court ignored a possible problem with the certificate letter, it found an abuse of discretion.

> "the district court did not impose sanctions and instead entered a Letter of Certification that **allowed respondents to proceed** with the foreclosure process on the Pasillases' property. **The district court essentially ignored the fact that respondents failed** to bring "to the mediation each document required" and did "not have the authority or access to a person with the authority" to modify the loan, failures which we determine constitute sanctionable offenses. **Thus, the district court's order directing the program administrator to enter a letter of certification** and its failure to consider sanctions **was an abuse of discretion** because respondents clearly violated NRS107.086 and the FMRs.[10] This abuse requires us to remand the case for the district court to consider appropriate sanctions." *Pasillas v. HSBC Bank USA*, 255 P.3d 1281 (2011)

The District Court abused its discretion in disregarding the even more serious matter of misrepresenting the Lender to the State of Nevada.

## D.     TRUSTEE'S NOTICE OF SALE VIOLATES 107.080

On or about February 18, 2010, Appellees caused to be recorded, a Notice of Trustee's Sale (the "Notice of Trustee's Sale") against Appellant's Property, and in favor of Defendant WAMU, as beneficiary. Again the Appellees violate NRS 107.080 as they are acting from a breached deed of trust. In this document JPMC is not even mentioned, WAMU is names as

the beneficiary.  [EOR Vol. 2, Doc. 84-4, pages 16-18].

### E.    APPELLANT QUIET TITLE LAWSUIT IN STATE COURT

On March 8, 2010 Appellant filed a quiet title Complaint in the Second Judicial District Court for the State of Nevada in the County of Washoe seeking to quiet title to his Property and alleging violations of NRS 106.260, 106.270 and 106.290, NRS 107.073, 107.077 and 107.080.   The original complaint, was filed in pro per, in the State District Court of Washoe County, Case no. CV10-00670. The original complaint has not been amended. [EOR Vol. Doc. 84-3, pages 1-20]

### F.    APPELLEES PETITION REMOVAL FROM STATE COURT

On April 13, 2010, Appellee JPMC, as a Lender, filed a Petition for Removal of the case to the federal court based upon diversity, 28 U.S.C. § 1441(b).  [Doc. 1].   The District Court will later find that Appellee JPMC was not the Lender.  Diversity was the sole basis for the District Court's federal jurisdiction.  The Motion was granted despite the objection of the Appellant.

On or about July 2, 2010, The District Court issued an Order denying Plaintiff's objection to removal.  [Doc. 20]  On or about August 16, 2010, Plaintiff's Motion to alter or amend the Order denying removal and the case stayed in Federal Court.  [Doc. 31]

Various other filings were made, a Motion to Amend the Complaint was denied, discovery was conducted.

### G.   SUMMARY JUDGMENT MOTIONS

Then on March 30, 2011, Appellant and Appellees JPMC and CRC both filed summary judgment motions.

On March 30, 2011, Appellant filed a Motion for Summary Judgment. [EOR V2, Doc. 83-2].  The primary arguments made by Appellant were (1) JPMC did not have standing to foreclose; and, (2) JPMC and CRC had both

violated NRS 107.080 by and among other things submitting a fraudulent Notice of Default to the Nevada Certificate Program.

On March 30, 2011, Appellees filed a Motion for Summary Judgment. (EOR Vol. 2 Doc. 81).

Summary judgment was clearly not appropriate as there are only triable issues of fact as to how a servicer was permitted to record a Notice of Default, and proceed to foreclose in the admitted lack of a contract to use.

On April 23, 2011 Appellant responded to Defendant JPMC and CRC's Motion for Summary Judgment  [EOR, Vol. 2, Doc. 92]

On April 25, 2011 Defendant JPMC and CRC's responded to Plaintiff's Motion for Summary Judgment.  [EOR Doc. 93]

## H.    THE JUNE 29, 2011 COURT ORDER

On June 29, 2011, the Court granted Appellees motion for summary judgment and motion to expunge lis pendens and denied Appellant's cross-motion for summary judgment.  (EOR Vol. 1 Doc. 97).

The Order ignored the lack of standing of JPMC completely, and determined that Appellee JPMC had "purchased certain assets and liabilities of WAMU including the right to act as a loan servicer over the underlying mortgage notes." (EOR Vol. 1 Doc. 97, page 2, lines 6-7)

The Court actually did make quick reference to the two separate Notice of Default being used, both violating the contract and 107.080 which require the actual lender to act.  The District Court abused its power to make this finding:

"Therefore, the court finds as a matter of law that CRC had standing to file the underlying notice**s** of default."

With this logic anyone can record Notices of Default without regard

to contracts or code sections.

The court then ends the circular arguments stating: "Garand cannot make a claim in equity for actions that are guided by a contract to which he is a party." [EOR Vol. 3, Doc. 97, lines 10-11]

Mr. Garand was not making a claim and equity and spent volumes arguing that the contract should apply. This same court in the same Order says the Trustee does not have to abide by the Contract.

The mass confusion and instincts of the courts to favor the banks is due to not understanding that the Notes are unsecured, they should be disconnected from the real estate.

## I.     THE AUGUST 26, 2011 COURT ORDER

On June 29, 2011 the District Court issued an Order that disregarded completely two of Appellant's primary the arguments (1) that Defendant JPMC lacked standing to act under the deed of trust to use the remedies of foreclosure found therein; and (2) The lack of an assignment of the security instrument, or recording of any further deeds of trust to secure a new loan have been recorded. The lack of a beneficiary was ignored.

In the June 29, 2011 Order the District Court finds that JPMC was not the Lender:

> "Defendant JP Morgan purchased certain assets and liabilities of WAMU including the right **to act as loan servicer** over the underlying mortgage notes" [EOR Doc. 97, page 2 of 5, lines 6- 7].

The District Court has made a finding that JMPC as not the Lender. This means as a matter of law the Notice of Default naming Appellee JPMC as the Lender is void.

The June 29, 2011, Order on the summary judgments recognized that

the contract, the deed of trust, should be followed:

> "**there was a written contract between Garand and WAMU2,
> namely, the deed of trust**, which identified defendant CRC as the
> trustee, and the mortgage note. These documents guide the
> interactions, obligations, and rights of the parties. As such, Garand
> cannot make claim in equity for **actions that are guided by a
> contract to which he is a party**. See LeasePartners Corp., 942
> P.2d at 187-88." [EOR Doc. 97, page 5 or 5, lines 10 -12]

Again in what appears to be nonsense as in the last Order, the District
Court agrees that the contract should control, which it should if it had not
been breached, then disagrees.  Granting the banks wishes by concluding:

> "CRC was within its statutorily created power when it recorded the
> underlying notice of default even if it didn't have the right under the
> loan agreement".

Appellant is only bound by the deed of trust and note.  The District
Court's Orders are circular, and repetitive.


## J.     APPELLANT FILED A MOTION TO AMEND OR ALTER

On July 8, 2011, Appellant filed a Motion to Amend or Alter under
FRCP 59(e) due to the mistakes of fact and law, and inconsistent findings.

A primary argument was that having just determined that the bank
who had caused to be filed a Notice of Default on Appellant's Property was
merely a servicer how could it grant its motion for summary judgment.

The law on the issue of servicers foreclosing is clear, Servicer are not
real parties in interest as argued in the Motion:

"2. The **court found** that:
"Defendant J.P. Morgan Chase purchased certain assets and liabilities

of WAMU including the right to act as a loan **servicer** over the underlying mortgage notes."

3.Plaintiff alleges the servicer is **not** entitled to receive the Property as if it were the **Note Holder**, as this is a violation of both the Note and the Deed of Trust.

> 5. Plaintiff is **not in default** to Defendant J.P. Morgan Chase.
> 12. Defendant California Reconveyance Company did not have authority to record the Notice of Default under the Deed of Trust.
> 13. Although NRS 107.080 may allow for the Trustee to execute and record a Notice of Default the contracts clearly do not."
> 14. There is **no valid recorded Notice of Default**, as trustee was not
> authorized to record a Notice of Default.
> 22. A **loan servicer is not a real party in interest** and therefore should not be able to ask the court to act on its behalf.
> 26. Another error of fact in the Order was that the Court thought Plaintiff was arguing the Trustee did not have standing.
> "As to Garand's argument that CRC lacks standing".
> 27. That was not the argument it was that Defendant **J.P. Morgan Chase did not have standing**.
> 28. Plaintiff has alleged that **no interest in his property was transferred** to Defendant J.P. Morgan Chase **in the claimed Purchase and Assumption Agreement**, they claim to be the "Servicer" under." [EOR Vol. 3, Doc. 99]

Nonetheless Appellant's Motion to Alter the Order giving summary judgment to a non-Lender.

## K.    APPELLANT REPLY TO OPPOSITION TO MOTION TO AMEND OR ALTER

On July 29, 2011, Appellant filed a Reply to Defendants' JPMC and CRC Opposition to Plaintiff's Motion to Alter or Amend the June 29, 2011 Order.   [EOR Vol. 3, Doc. 102]

The District Court found:

"there was a written contract between Garand and WAMU, namely, **the deed of trust**, which identified defendant CRC as the trustee, **and the mortgage note**. These documents **guide the interactions,**

16

**obligations, and rights of the parties**. As such, Garand cannot make a claim in equity for actions that are guided by a contract to which he is a party. See Lease Partners Corp., 942 P.2d at 187-88.".

However, by August 26, 2011, the District Court was finding that:

"CRC was within its statutorily created power when it recorded the underlying notice of default even if it didn't have that right under the loan agreement".

The District Court abused its discretion twisting the law to accommodate the bank.  There is no way the Court could think a trustee could pull a power to foreclose out of thin air.  The Deed of Trust is not the guiding obligation.

It was an abuse of discretion to disregard Appellant's contracts.

Appellant should have been granted his summary judgment motion based on this finding alone.

## VI. SUMMARY OF ARGUMENT

    A.    INTRODUCTION
    B.    THE WAMU DEED OF TRUST WAS BREACHED AND IT IS INOPERABLE
    C.    APPELLEE JPMC IS NOT A REAL PARTY IN INTEREST
    D.    APPELLEES HAVE VIOLATED NRS 107.080
    E.    THE DISTRICT COURT ERRED IN IGNORING JPMC'S LACK OF STANDING ARGUMENT
    F.    THE DISTRICT COURT ERRED IN FIND CRC HAD STANDING UNDER THE BREACHED WAMU DEED OF TRUST
    G.    ABUSE OF POWER
    H.    THE DISTRICT COURT ERRED IN CONCLUDING THERE WERE NO TRIABLE ISSUES OF FACT

## VII.  STANDARD OF REVIEW

REMOVAL - Removal of this case from the State Court after it had take jurisdiction over the res, the Appellant's Property, raises questions of subject matter jurisdiction.  Appellant understands that this issue is under appeal in *Chapman v. Deutsche Bank Nat. Trust Co.* 651 F. 3d 1039 - Court of Appeals, 9th Circuit, 2011.

SUMMARY JUDGMENT - The Courts standard of review for the Summary Judgment Appellees obtained against Appellant:

> "A defendant "may move for summary judgment in any action or proceeding if it is contended that the action has no merit." (Code Civ. Proc., § 437c, subd. (a).)
>
> "When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting {Slip Opn. Page 11} evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.'" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.) A defendant moving for summary judgment must "present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854, fn. omitted.) *Herrera v. Deutsche Bank Nat. Trust Co.* (2011) , 196 Cal.App.4th 1366 [No. C065630. Third Dist. May 31, 2011.]

The District Court was never able to determine who the Lender was, and made a finding that Appellee

MOTION TO ALTER OR AMEND - As Appellant stated in the Motion to Alter or Amend [EOR Doc. 99, p.7]

"Rule 59 New Trial; Altering or Amending a Judgment (e): Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment

must     be filed no later than 10 days after the entry of judgment.

Rule 59(e) is a difficult standard to meet. A motion pursuant to Rule 59(e) may only be granted if the Court is presented with: (1) an intervening change in the controlling law; (2) the availability of new evidence; or **(3) the need to correct a clear error of law or fact**

**or**     **to prevent manifest injustice**. Max's Seafood Café v. Quinteros,

176     F.3d 669, 677 (3d Cir. 1999)."

The Motion to Amend or Alter under FRCP 59(e) requires the Motion to

be filed in 10 days, Appellant filed in 9 days. [EOR Vol. 1, Doc. 107] Appellant

shows significant errors in law and fact as discussed herein.

## VIII.  ARGUMENT

### A.     INTRODUCTION

Shortly after President Obama took office in 2009, Appellant learned

through attempts to get a modification that the top banks that are

foreclosing across the country do not own the Notes.

"For example unfortunately it used to be that when you took out a mortgage you went to the local bank, they gave you the loan and they kept the mortgage right there in the bank.  As I think a lot of people know these days what happened was, they took these mortgages wrapped them up in big bundles then sold slices of them on the stock market and so you don't have anyone person who actually owns the mortgage, which makes negotiations on a lot this stuff very difficult".  President Barak Obama, CSPAN 2 July 2009

With the advent of Mortgage Electronic System, Inc., aka MERS, the

county recording systems were privatized by the banking industry, in disregard to

the recording process.  The failure to assign the security interests violates the

recording statutes as well as depriving counties of assignment and documentary transfer tax fees. The real estate Notes in this country were securitized, sold into trusts, and then sold to investors all over the world. Those investors purchased unsecured debt.

The original lenders by selling the Notes without assigning the security interest have breached the Deeds of Trust and separated the Notes from the deeds of trust. The Note Holders (payors) have been separating the borrowers, the payees, and the "Servicers" are attempting to create another party in real estate transaction world, or at least to date they have. It is not because MERS is a sham, "**Even if we were to accept the plaintiffs' premises that MERS is a sham beneficiary and the note is split from the deed**" *Cervantes v. Countrywide Home Loans, Inc.* 656 F.3d 1034 (2011). It is a sham because the originating Lenders, in this case, WAMU, breached the contract when it sold the Note without the security instrument and not reconveying their interest. The contracts and the recording statutes governing the maintaining of a secured interest in a Note, for the benefit of the Note Holder.

The contracts that govern the typical secured transaction are the deed of trust and the Note.

The transfer of the Note, the negotiable instrument is governed by the U.C.C. and the contracts. The transfer of the Deed of Trust is governed by the

recording statutes and the contracts.   They are two separate documents,

with two separate values.  The WAMU Note is the negotiable instrument.

The Deed of Trust on the other hand only operated to secure the payments

due on the Note to the Note Holder.

> "The proper method of transferring the right to payment under a mortgage **note** is governed by Article 3 of the Uniform Commercial Code—Negotiable Instruments, because a mortgage **note** is a negotiable instrument.[6] Birkland v. Silver State Financial Services, Inc., No. 2:10-CV-00035-KJD-LRL, 2010 WL 3419372, at *4 (D. Nev. Aug. 25, 2010). **The obligor on the note has the right to know the identity of the entity** that is "entitled to enforce" the mortgage **note** under Article 3, see NRS 104.3301, "[o]therwise, the [homeowner] may pay funds to a stranger in the case." In re Veal, No. 09-14808, 2011 WL 2304200, at *16 (B.A.P. 9th Cir. June 10, 2011) (holding, in a bankruptcy case, that AHMSI did not prove that it was the party entitled to enforce, and receive payments from, a mortgage **note** because it "**presented no evidence as to who possessed the original Note**. It also presented **no evidence showing [endorsement of the note** either in its favor or in favor of Wells Fargo, for whom AHMSI allegedly was servicing the [bankrupt party's] Loan."). If the homeowner pays funds to a "stranger in the case," then his or her obligation on the **note** would not be reduced by the payments made. See id. at *7 ("if a[n obligor on a mortgage **note**] makes a payment to a `person entitled to enforce,' the obligation is satisfied on a dollar for dollar basis, and the [obligor] never has to pay that amount again"). *Leyva v. National Default Servicing Corp*., (July 7, 2011) 127 Nev. Adv. Op. No. 40, Case No. 55216

     The transfer of the Note must be evidenced by endorsement(s).

The Note can be endorsed in blank, as the evidence shows that the

subject WAMU Note was endorsed without recourse. [EOR Doc. 84-6]

> "A note can be made payable to bearer or payable to order. NRS 104.3109. If the note is payable to bearer, that "indicates that the person in possession of the promise or order is entitled to payment." NRS 104.3109(1)(a). *Leyva v. National Default Servicing Corp*.

The Note Holder as defined on the Note as the one entitled to payment, can demand payment just by presenting the Note.  The banks are getting everyone caught up in the deeds of trust, which have been separated and are in use by the banks without the involvement of the real parties in interest, the Note Holders.

The second document in the WAMU/Appellant transaction, is the security instrument, in this case a Deed of Trust.

According to *Leyva v. National Default Servicing Corp.*:

"A deed of trust is an instrument that "secure [s] the performance of an obligation or the payment of any debt." NRS 107.020. This court has previously held that a deed of trust "constitutes a conveyance of land as defined by NRS 111.010."[5] Ray v. Hawkins, 76 Nev. 164, 166, 350 P.2d 998, 999 (1960). The statute of frauds governs when a conveyance creates or assigns an interest in land:  No estate or interest in lands, . . . nor any trust or power over or concerning lands, or in any manner relating thereto, shall be created, granted, assigned, surrendered or declared . . ., unless ... by deed or conveyance, in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by the party's lawful agent thereunto authorized in writing...

NRS 111.205(1) (emphases added). Thus, to prove that MortgageIT properly assigned its interest in land via the deed of trust to Wells Fargo, Wells Fargo **needed to provide a signed writing from MortgageIT demonstrating that transfer of interest. No such assignment was provided** at the mediation or to the district court, and the statement from Wells Fargo itself is insufficient proof of assignment. Absent a proper assignment of a deed of trust, Wells Fargo **lacks standing to pursue foreclosure** proceedings against Leyva."

In this case Appellee JPMC did not bring forth an Assignment as evidence and there is no Assignment recorded in the Washoe County records.

The Nevada Supreme Court case of *Pasillas v. HSBC Bank USA*, 255 P.3d 1281 (2011), quoting from the Supreme Judicial Court of Massachusetts case of *U.S. Bank National Ass'n v. Ibanez,* 458 Mass. 637, 941 N.E.2d 40 (2011), which held:

> "The court concluded that the banks demonstrated no authority to foreclose on the properties because they did not have the assignments. *Id.* at 53 ("We have long held that a conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void; **we do not regard an assignment of land in blank as giving legal title in land to the bearer of the assignment**."). The court additionally stated that "[a] plaintiff that cannot make this modest showing it cannot justly proclaim that it was unfairly denied a declaration of clear title." *Id.* at 52. We agree with the rationale that **valid assignments are needed when a beneficiary of a deed of trust seeks to foreclose on a property**.

There is no Assignment of the Deed of Trust therefore a new Note Purchaser, or a stranger bank, cannot use the remedies within the Deed of Trust to foreclosure.

Secondly, the Note was endorsed in blank.  The Supreme Courts of both Nevada and Massachusetts agree that "an assignment of land in blank as giving legal title in land to the bearer of the assignment". *Pasillas v. HSBC Bank USA*.

The District Court abused its discretion by not granting summary judgment in favor of Appellant on this issue alone.  The Note was sold in blank.

The confusion lies in this one sentence, which attempted to "simplify".  The 9th Circuit decision in *Cervantes v. Countrywide Home Loans, Inc.* makes fungible the Lender with the beneficial interest:

> "The owner of the beneficial interest is entitled to repayment of the loan. For simplicity, we will refer to the owner of the beneficial interest as the "lender." *Cervantes v. Countrywide*

*Home Loans, Inc.* 656 F.3d 1034 (2011):

A "beneficial interest" is a trust interest, it is defined as: "a distribution interest or a remainder interest, but does not include a power of appointment or a power reserved by the settlor". NRS 163.4145

A beneficial interest is not the same as the "Lender", and the difference is the difference between a secured Note and an unsecured Note. The real estate market can legally be separated from the debt!

### B.     THE WAMU DEED OF TRUST WAS BREACHED AND IT IS INOPERABLE

WAMU breached the Deed of Trust prior to it being seized by the FDIC by selling the Note(s) without assigning the Security Instrument as required in the Deed of Trust. "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without *prior* notice to Borrower." [EOR Vol. 2, Doc. 84-7, ¶20, pg. 14 of 19] Borrower is entitled to written Notice of from the Lender on who to pay, as the servicing contracts "are not assumed by the Note purchaser unless otherwise provided by the Note purchaser". [EOR Vol. 2, Doc. 84-7¶20, pg. 14 of 19].

Likewise, CRC breached the Deed of Trust as when WAMU sold the Note, trustee failed to record anything. The contract states: "Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any

covenants or warranty, expressed or implied." [EOR Vol. 2, Doc. 84-7¶22, pg. 15 of 19].

Further WAMU and CRC breached the Deed of Trust by not reconveying after the sale in compliance with the Reconveyancing section of the Deed of Trust.

When WAMU sold the note "Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this security Instrument to Trustee.  Trustee shall reconvey the Property. [EOR Vol. 2, Doc. 84-7 ¶23, pg. 15 of 19].

Appellant has not breached the contract as he continued to make payments to non-lenders *after* WAMU breached the contract.  Appellant is not in default as the WAMU Deed of Trust requires "Lender shall give notice to Borrower prior to acceleration".  "The notice shall specify: (a) the default..." "If the default is not cured … Lender at its option, and without further demand, may invoke the power of sale. [EOR Vol. 2, Doc. 84-7 ¶22, pg. 15 of 19].  Appellant has never received Notice of an alleged default from a Lender.

Foreclosure is a remedy to a breach of a Deed of Trust.  The WAMU Deed of Trust has been breached and is no longer operable.  No one will have standing to use the Deed of Trust.

## C.    APPELLEE JPMC IS NOT A REAL PARTY IN INTEREST

The Appellees have had several explanations as to how JPMC

claimed an interest in Appellant's Property, some of the explanations are:

a.    On October 25, 2010, Appellees JPMC and CRC filed an
Individual Case Management Report in which they claim:
"**Chase contends** that it has acquired the rights as the **servicer**
for the Federal Home Loan Mortgage Corporation ("FHLMC")
under the **first lien** deed of trust (and related loan), **and** Chase
is the **owner** of   the **beneficial interest** under the **second
lien** deed of trust (and **owns that loan**)." [EOR Doc. 58, pg. 5,
lines  20-22]

b.   On January 3, 2011 at Appellant's deposition, Appellees' attorney
stated he was **not sure** if Freddie Mac still owed the "loan" that
it is allegedly foreclosing on behalf of, using a Notice of Default
with only its name on it.
"I mean, we believe that Freddie Mac still owns the loan"
[EOR Vol. 1, Doc. 79, page 11, lines 11 – 12]
"We have standing as the servicer to pursue the rights of Freddie
Mac." [EOR Vol. 1, Doc. 79, page 11, lines 15 – 16]
"I have personally seen, held in my hands the original of the note
endorsed in blank". [EOR Vol. 1, Doc. 79, page 11, lines 17 – 19]

c.    On April 25, 2011, Appellees described in detail:
"The $208,000 **loan was sold to Freddie Mac in February,
2007**.  **WAMU retained the loan servicing rights** for the
$208,000 loan, and **Chase acquired those servicing rights
from the Federal Deposit Insurance Corporation (the
"FDIC")**, acting as receiver for WAMU, when the FDIC placed
WAMU into receivership on September 25, 2008.  The home
equity loan was retained by WAMU and **Chase acquired all of
WAMU's rights under the documents evidencing/
governing the home equity loan from the FDIC**, acting as
receiver for WAMU, when the FDIC placed WAMU into
receivership on September 25, 2008." [EOR Vol. 3, Doc. 93, pg.
3, lines 8-15]

The same document contradicts itself!  [EOR Vol. 3, Doc. 93, pg 18, l
9–10]:

> "Chase can also rightly (and legally) take the position that it is the "holder" of the Note and is entitled to enforce its terms.."

This is patently false as the Note itself describes who the "holder" is:

> "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder". [EOR Doc. 84-5, pg. 1]

Then JPMC admits there is no Assignment of the Deed of Trust, the security for the Note it admits it does not own, a beneficial interest in a trust does not make someone a Lender under the Deed of Trust:

> "No record interest is conveyed to the lender under a deed of trust (i.e., a beneficiary), who holds only a beneficial interest arising under the deed of trust." [EOR Vol. 3, Doc. 93, pg. 19, lines 9-11].

Appellees also are not following the contract. Appellees refer to the Note and Deed of Trust as a "loan". The Deed of Trust defines Loan as:

> "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest". [EOR Vol. 2, Doc. 84-7, page 4(G)

There is no evidence that Appellee JPMC has any interest in the WAMU Note or any interest in the WAMU Deed of Trust. There is evidence that the Note was endorsed in blank by WAMU on the last page of the WAMU Note, signed by WAMU, without recourse.

Endorsement in blank means it is not secured, it is payable to bearer. No one has the power to use the WAMU Deed of Trust, due to the passage of

time.

## D.  APPELLEES HAVE VIOLATED NRS 107.080

Appellees have violated NRS 107.080 by their joint efforts at recording a Notice of Default.

If order to comply with NRS 107.080 there must be a "breach of the obligation secured by the Deed of Trust".  As discussed above, the deed of trust was breached by WAMU and the trustee, CRC, who failed to properly assign and reconvey the WAMU interest to the new Note purchaser in 2007.

NRS 107.080 was also violated at least by: "NRS 107.080 1. a power of sale is hereby conferred upon the trustee to be exercised *after a breach* of the obligation for which the transfer is security.

If the contract is breached there are no further obligations under the Deed of Trust, albeit the Note Holder still has rights under the Note.

NRS 107.080 was violated as a review of the Notice of Default will show that it is lacking the following information required by NRS 107.080 2.(c) 1 – 6, there is no information about:

> (1) The full name and business address of the trustee or the trustee's personal representative or assignee, the current holder of the note secured  by the deed of trust, the current beneficiary of record and the servicers of the obligation or debt secured by the deed of trust;
> (2) The full name and last known business address of every prior known beneficiary of the deed of trust;
> (3) That the beneficiary under the deed of trust, the successor in interest of the beneficiary or the trustee is in actual or constructive possession of the   note   secured by the deed of trust;
> (4) That the trustee has the authority to exercise the power of sale with respect to the property pursuant to

> the instruction of the beneficiary of record and the current
> holder of the note secured by the deed of trust;
> (5) The amount in default, the principal amount of the
> obligation or debt secured by the deed of trust, a good
> faith estimate of all fees imposed and to be imposed
> because of the default and the costs and fees charged to
> the debtor in connection with the exercise of the power of
> sale; and
> (6) The date, recordation number or other unique
> designation of the instrument that conveyed the interest
> of each beneficiary and a description of the instrument
> that conveyed the interest of each   beneficiary".

Appellees' do not even claim to have strictly complied.

On May 10, 2011, Appellees claim in their Reply to Opposition to their Motion for Summary Judgment, that they are in "substantial compliance with the notice provisions of Chapter 107 of the Nevada Revised Statues".  [EOR Vol. 2, Doc. 95, page 2, line 10]

NRS 107.080 requires strict compliance.

"In this, we address whether substantial compliance satisfies the mandates of the statute and FMRs. Because we conclude that strict compliance is compelled by NRS 107.086(4) and (5), that the assignment offered was defective, and that no endorsement of the mortgage note was provided according to Article 3 of the Uniform Commercial Code, we conclude that Wells Fargo failed to produce the documents required under NRS 107.086(4)...

"In essence, Wells Fargo asserts that its failure to strictly comply with the statute's and FMRs' requirements should not subject it to sanctions, because it substantially complied with those requirements.

Substantial compliance may be sufficient `to avoid harsh, unfair or absurd consequences.' Under certain procedural statutes and rules, however, failure to strictly comply . . . can be fatal to a case."
Leven v. Frey, 123 Nev. 399, 407, 168 P.3d 712, 717 (2007) (quoting 3 Norman J. Singer, Statutes and Statutory Construction § 57:19, at 58 (6th ed. 2001)). To determine whether a statute and rule require strict compliance or substantial compliance, this court

looks at the language used and policy and equity considerations. Id. at 406-07, <u>168 P.3d at 717</u>. In so doing, we examine whether the purpose of the statute or rule can be adequately served in a manner other than by technical compliance with the statutory or rule language. See id. at 407 n.27, <u>168 P.3d at 717</u> n.27 (citing <u>White v. Prince George's County, 877 A.2d 1129, 1137 (Md. Ct. Spec. App. 2005)</u> ("Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute." (internal quotation omitted))). *Leyva v. National Default Servicing Corp.*,(July 7, 2011) 127 Nev. Adv. Op. No. 40, Case No. 55216

Strict compliance with NRS 107.080 is required, substantial compliance is not sufficient.  Appellees violated 107.080.   Pursuant to NRS 107.080 7, the **court must** award to the grantor or the person who holds title of record**:**

    (a) Damages of $5,000 or treble the amount of actual damages, whichever is greater;

    (b) An injunction enjoining the exercise of the power of sale until the beneficiary, the successor in interest of the beneficiary or the trustee complies with the requirements of subsections 2, 3 and 4; and

    (c) Reasonable attorney's fees and costs, unless the court finds good cause for a different award.

The Notice of Default is void due to a non-Lender, JPMC, causing it to be recorded for its benefit, as discussed supra.

The District Court abused its discretion in disregarding the invalid Notice of Default in its August 26, 2011 Order which states:

" ..there is no valid notice of default, and without a valid notice of default, a foreclosure sale cannot proceed. *Mabry v. Superior Court* (2010) 185  Cal.App.4[th] 208, 235

The Appellees should have been denied summary judgment, as they cannot foreclose without a valid Notice of Default.  Summary judgment should have been in favor of Appellant.

## E.    THE DISTRICT COURT ERRED IN IGNORING JPMC'S LACK OF STANDING ARGUMENT

The District Court erred in incorrectly reading Appellant's Motion for Summary Judgment as an argument that CRC, the trustee in the WAMU Deed of Trust, did not have standing.  That was not the argument.  Ignoring standing is an abuse of discretion.

In the Court's Order the only references to "Standing" were regarding CRC:

> "First, Garand argues that defendant CRC did not have standing to file the underlying notices of default."  and,

> "As to Garand's argument that **CRC lacks standing** to file the notices of default, the court finds that his claim is without merit. Under Nevada law, a trustee under a deed of trust can initiate a non-judicial foreclosure and record a notice of default. See NRS 107.080(4)." [EOR Vol. 1, Doc. 106]

That was not the argument.   There was much argument about JPMC not having standing, which the District Court should have realized when it determined that Appellee JPMC had purchased "servicing contracts" in the Purchase and Assumption Agreement.   The District Court abused it discretion in not separating a foreclosure under deeds of trusts and notes, from the concept of a beneficial interest, which the selling and reselling of notes.  The laws converge and must be separated or you have a result of a

large bank who paid nothing for the Note, and has no contractual

connection to Appellant or his Property, just taking the property in a land

grab while the courts take years to figure out what happened.

CRC is the named Trustee, the Trustee is not authorized under the

terms of the Deed of Trust to act for JPMC.

In Appellant's Summary Judgment Motion of March 30, 2011 [EOR

Vol 2. Doc., Appellant argued among other things that:

    a.    "Defendant J.P. MORGAN CHASE cannot show standing
as it does not own the Note and cannot established that
they were damaged or harmed." [EOR Vol. 2, Doc. 83-2,
page 7, lines 24-26]

    b.    "Defendant J.P. MORGAN CHASE has no standing
because it does not own the Note,
was not damaged, was not assigned any interest in the
Property, and did not receive the Property via the
Purchase and Assumption Agreement".  [EOR Vol. 2, Doc.
83-2, page 9, lines 1-2]

Appellee JPMC has no contractual ties to Appellant and no standing

to use the WAMU Deed of Trust foreclosure remedies found in ¶19 - ¶24.


F.    THE DISTRICT COURT ERRED IN FIND CRC HAD STANDING
UNDER THE BREACHED WAMU DEED OF TRUST

The District Court erred in finding that Appellee CRC had standing to

act under the WAMU/Appellant Deed of Trust, which merely named them as

a ministerial trustee.

    1.    The WAMU Deed of Trust was void and no one can use its

remedy of foreclose.

2.    Appellee CRC had no power to act until the Lender gave it notice of a default.  The Lender is the only one who can call a default.  There is no Default until Lender sends Appellant a notice to "cure".

A trustee under a security instrument is only a ministerial role.

"A trustee of a trust deed is not a trustee in the strict sense of the word. The role of such trustee is more nearly that of a common agent of the parties to the instrument". (Pacific S. & L. Co. v. N. American etc. Co. (1940) 37 Cal. App. 2d 307, 310 [99 P.2d 355]. *Lupertino v. Carbahal* 35 Cal. App. 3d 742

Therefore it would never be correct to state that the power

of sale comes from the Trustee.

"In a nonjudicial foreclosure, also known as a "trustee's sale," **the trustee exercises the power of sale given by the deed of trust.** (Bernhardt, Cal. Mortgage and Deed of Trust Practice, supra, § 1.28,  p. 37; id., § 2.1, p. 51.)" *Alliance Mortgage Co. v. Rothwell* (1995) 10 C4th 1226 [S043065 Cal Sup Ct Aug., 28, 1995.

"Just as a panda is not a true bear, a trustee of a deed of trust is  not a true trustee." *Stephens, Partain & Cunningham v. Hollis* (1987) 196 Cal. App. 3d 948, 955

Allowing the Trustee to override the terms of the contract is absurd.

The harder argument to get around is that Respondent JPMC

has no standing to foreclose on Appellant's property.  No foreclosure

has occurred.

The third cause of action was to quiet title to the Property. Plaintiffs alleged defendants had no original, verifiable promissory note or deed of trust and had no standing to foreclose. They further alleged all rights, title and interest asserted by defendants "were sublimated into a non-functional 'security' instrument that gives no one entity

rights in individual notes and deeds of trust." No defendant had an interest in the Property, but they had placed a cloud upon plaintiffs' title**.** Herrera v. Deutsche Bank Nat. Trust Co. (2011) , 196 Cal.App.4th 1366 [No. C065630. Third Dist. May 31, 2011.]

Appellee JPMC does not have any contractual ties to the 2 required document, the Note and the Deed of Trust.  JPMC is not in privity of contract with Appellant and has no standing to use the WAMU deed of trust to foreclose on Appellant's Property.

### G.    ABUSE OF POWER

The District Court abused its power by finding that a non-real party in interest, JPMC should prevail in a summary judgment motion when it had no standing to act under the WAMU deed of trust to foreclose.

### H.    THE DISTRICT COURT ERRED IN CONCLUDING THERE WERE NO TRIABLE ISSUES OF FACT

Summary Judgment should not have been granted in favor of Appellees as although it is settle law it is settle in favor of Appellant.  Any "genuine issue of material fact" would be can a servicer cause to be recorded a Notice of Default, and initial foreclosure?   Was the Deed of Trust even operable, or was it breached?  Was the Court allowing the actions of the Trustee to come from the Purchase and Assumption Agreement having agreed the Trustee was not following the contract?

The Appellees Declarations and recordings cannot be relied on as their contents are hearsay.  In accordance with *Herrera v. Deutsche Bank Nat. Trust Co.,* Appellant requests the Court find there were "triable issues of material fact remain" that should have prevented a summary judgment motion:

"Because defendants failed to present facts to establish that the Bank was beneficiary and CRC was trustee under the 2003 deed of trust, and therefore had authority to conduct the foreclosure sale, triable issues of material fact remain" *Herrera v. Deutsche Bank Nat. Trust Co.* (2011) , 196 Cal.App.4th 1366

Appellee even admits there are triable issues left in the Opposition to Motion to Alter:

"Moreover, any claim that could possibly arise out of the trustee's sale itself would not be ripe for adjudication at this time, give that no trustee's sale has taken place" [EOR Doc. 101, pg. 5, lines 14-16]

The District Court abused its discretion finding that the bank did not even have to be a party to the contracts.

CONCLUSION

The District Court erred in finding that JPMC had purchased any contract that would bind Appellant, it erred in accepting a void Notice of Default, ignoring the issue of lack of standing Appellee JPMC did not have standing to act under the breached deed of trust.

The Notice of Default caused to be recorded by Appellees was void as the District Court only found that JPMC purchased servicing contracts through the Purchase and Assumption Agreement. A Lender is required to initiate the foreclosure process, which begins with written notice of a default, and 30 days to cure.

The Notice of Default should be rescinded.

The District Court should have granted summary judgment in favor of Appellant.

CERTIFICATE OF COMPLIANCE PURSUANT TO FRAP 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NUMBER 10-15215.

Pursuant to FRAP 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached brief is not proportionally spaced and has type-face of 13 points and contains 9,543 words.

Dated:  May 21, 2012

By:_____/S/_____
Kathryn Reynolds, Attorney for Appellant


STATEMENT OF RELATED CASES

The some issues are identical to Chapman v. Deutsch Bank, et al, No. 10-15215.

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2012, pursuant to FRCP 5(b), I have deposited in the United States Mail in Reno, Nevada, a true and correct copy of the:

OPENING BRIEF

enclosed in a sealed envelope upon which first class postage was fully prepaid addressed to the following:

Kent Larsen, Esq.
SMITH LARSEN & WIXOM
 1935 Village Center Circle
Las Vegas, NV 89134


By_____/S/_____
Kathryn Reynolds